## In re JOINT EASTERN AND SOUTHERN DISTRICT ASBESTOS LITIGATION.

**This Document Relates To: Ferraiuolo (CV–87–1070) (E.D.N.Y.)**

**No. CV–87–1070.**

United States District Court,
E.D. New York and
S.D. New York.

Dec. 21, 1988.

Lipsitz, Green, Fahringer, Roll, Schuller & James by Michael Pontario, Buffalo, N.Y., for plaintiff.

Davis, Markel & Edwards by George Hritz, New York City, for defendant.

## MEMORANDUM AND ORDER

SIFTON, District Judge.

This asbestos-related personal injury case is before the Court on defendant Eagle–Picher Industries, Inc.'s motion for summary judgment based on the "military contractor defense," and on plaintiff's cross-motion to strike the defense. Because defendant has failed to demonstrate a conflict between state tort law and the federal specifications pursuant to which Eagle–Picher claims to have acted, defendant's motion is denied and plaintiff's motion is granted.

The facts relevant here are not disputed. Plaintiff alleges that he was exposed to defendant's asbestos products in the course of his work between 1942 and 1946 at the Brooklyn Navy Yard. The Navy specifications pursuant to which defendant supplied its products explicitly called for asbestos; however, those specifications did not expressly prohibit defendant from including health warnings on those asbestos products. The only specification remotely related to the subject of warnings to which defendant directs the Court's attention provides as follows:

"G–1. *Packaging.* Unless otherwise specified, commercial packages are acceptable under this specification.

G–2. *Packing.* Unless otherwise specified, the subject commodity shall be delivered in substantial commercial containers of the size commonly used, so constructed as to insure safe delivery by common or other carriers to the point of delivery at the lowest rate, and to withstand storage, rehandling, and reshipment without the necessity for further packing.

G–3. *Marking.* Unless otherwise specified, shipping containers shall be marked with the name of the material, the type, and the quantity contained therein, as defined by the contract or order under which the shipment is made, the name of the contractor, the number of the contract or order, and the gross weight."

Navy Department Specification: Cement, Insulation, High–Temperature, ¶ G.

Defendants claim that this specification "prescribed exactly how the package should look." Defendant's Memo, p. 21. Be that as it may, it is clear that the specification does not expressly preclude warnings.

The only basis for an argument that the specifications prohibited warnings is the assertion that in 1945, the Navy was informed that certain asbestos product manufacturers "would be glad to get out a brief statement of precautions" about the products. The Navy responded that "[f]rom a health standpoint, [the Navy and U.S. Maritime Commission] do not believe any specification changes are necessary." Defendant's Statement of Undisputed Facts ¶¶ 109, 110. The most that can be drawn from this is that the manufacturers were willing to include warnings on their products if directed to do so. This history is hardly a sufficient basis for a rational inference that warnings were prohibited.

Plaintiff has brought suit against defendant alleging negligence and strict product liability, both grounded in a failure to warn workers exposed to defendant's products of the dangers of asbestos.

In *Boyle v. United Technologies Corp.*, — U.S. ——, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988), the United States Supreme Court adopted the military contractor defense as a matter of federal common law. That defense has precise requirements. The Supreme Court noted that the mere fact of supplying products to the military will not entitle a defendant to the displacement of state tort law. Instead,

"[d]isplacement will occur only where, as we have variously described, a 'significant conflict' exists between an identifiable 'federal policy or interest and the [operation] of state law,' . . . or the application of state law would 'frustrate specific objectives' of federal legislation."

*Boyle, supra,* 108 S.Ct. at 2515 (citations omitted). No such "significant conflict" exists where a defendant can comply both with the federal specifications and with the standards of conduct imposed by the state.

"Between *Miree* [*v. DeKalb County,* 433 U.S. 25, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977) ] and the present case, it is easy to conceive of an intermediate situation in which the duty sought to be imposed on the contractor is not identical to one assumed under the contract, but is also not contrary to any assumed. If, for example, the United States contracts for the purchase and installation of an air conditioning unit, specifying the cooling capacity but not the precise manner of construction, a state law imposing upon the manufacturer of such units a duty of care to include a certain safety feature would not be a duty identical to anything promised the Government, but neither would it be contrary. The contractor could comply with both its contractual obligations and the state-prescribed duty of care. No one suggests that state law would generally be pre-empted in this context."

*Id.,* at 2516.

On the facts of *Boyle,* compliance with both federal and state mandates at once was impossible because each dictated a contrary helicopter design. The federal specifications, for reasons of military necessity, called for a hatch that opened outward, while state law called for a hatch that opened inward.

By contrast, in this case, because the federal specifications were silent on the matter of warnings, defendant could have provided adequate warnings to plaintiffs and complied with the federal specifications.

Defendant relies on *Nicholson v. United Technologies Corp.,* 697 F.Supp. 598 (D.Conn.1988), but *Nicholson* is distinguishable. That case involved injuries to a service technician resulting from explosion of a helicopter landing gear that he was repairing; plaintiff alleged that the helicopter's maintenance manual contained inadequate warnings and instructions. The opinion recites facts indicating that in that case unlike in the instant one, the government's control over any warnings was exhaustive and preclusive. *See, e.g.,* "The government maintained control over the contents of the manual and made revisions to the contents without the consultation or knowledge of [defendant]." 697 F.Supp. at 604. The *Nicholson* court did not expressly address the issue of a conflict between state duty-to-warn law and the federal specifications, perhaps because such a conflict was obvious. In the instant case, by contrast, there is no evidence of such a conflict. As was held in *In re Hawaii Federal Asbestos Cases,* 715 F.Supp. 298 (D.Hawaii 1988), "[c]learly, the defendants could have complied with their state law-imposed duty to provide adequate warnings without breaching their government contract. Therefore, I find that there is no 'significant conflict' presented between state law and any federal interest."

Defendant also argues that *Boyle* itself pre-empts state duty-to-warn law. The third requirement of the military contractor defense is that "[t]he supplier warn[ ] the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle, supra,* 108 S.Ct. at 2518. Defendant contends that this requirement of the warning to the government "subsumes" and "pre-empts" any state law requirement of a warning to plaintiffs. Defendant may be correct that the two kinds of warnings are grounded in related public policy concerns, but its argument is ill-founded. *Boyle* does not address the matter of warnings to the public because no duty-to-warn cause of action was then before the Court. Nor is there anything mutually inconsistent between the requirements, in a proper case, of a warning to the government and a warning to shipyard workers.

Moreover, even if defendant had demonstrated some conflict between the federal specifications here and its state law duty to warn, it would still have to show both that the conflict was "significant," *Boyle, supra*, at 2515, and that there was a "uniquely federal interest" in having that conflict resolved in favor of displacing state tort law. *Id.*, at 2514. But the only government interest that defendant has identified concerns the prevention of "disturbance in the labor element," Defendant's Statement of Undisputed Facts ¶¶ 71, 91, 114–15, and anxiety "about shipyard worker lawsuits." *Id.*, ¶ 114. Defendant, however, makes no showing that the government's asserted fear of labor unrest and lawsuits would have impeded any "uniquely federal interest" sufficient to displace state common law. *Boyle, supra*, at 2514. The government's asserted interest in prohibiting warnings, if such a prohibition existed, is essentially no different from that of any private employer.

Finally, even if the above prerequisites to the defense were satisfied, there would remain genuinely disputed issues of fact concerning the third element of *Boyle:* "the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." 108 S.Ct. at 2518. Precisely what defendant knew at what time and what the United States knew at the same time are genuinely disputed factual issues.

Accordingly, for the reasons stated above, defendant's motion for summary judgment is denied, and plaintiff's motion to strike the military contractor defense is granted.

It is, however, appropriate to certify this order for interlocutory appeal because it meets the criteria set forth in 28 U.S.C. § 1292(b). The order "involves a controlling question of law" because the defense has been asserted in this and numerous other cases pending in this district against Brooklyn Navy Yard suppliers. Second, "there is substantial ground for difference of opinion" on this question of law. The *Boyle* opinion, on which it turns, breaks new ground in the field of federal common law. Further, an immediate appeal "may materially advance the ultimate termination of the litigation," for two related reasons. If appeal is delayed until after trial, and the appeal is successful, a second trial will have to be held in order for defendant to present the facts of the defense. Delaying an appeal until after trial would cause the parties to remain uncertain of their relative bargaining positions and would, therefore, inhibit settlement not only of this case but also of the many other pending asbestos cases to which the military contractor defense might apply.

SO ORDERED.